**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MARGARET WHITTING,

                  Plaintiff,

          -against-

LOCUST VALLEY CENTRAL SCHOOL
DISTRICT,

                Defendant.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-cv-0742 (ADS)(ETB)

<u>**APPEARANCES:**</u>

**The Wagner Law Group**
*Attorneys for the Plaintiff*
99 Summer Street
13th Floor
Boston, MA 02110
        By: David George Gabor, Esq., Of Counsel

**Hope Senzer Gabor**
*Attorneys for the Plaintiff*
55 Cherry Lane
Suite 102
Carle Place, NY 11514

**Miranda Sambursky Slone Sklarin Verveniotis LLP**
*Attorneys for the Defendant*
240 Mineola Boulevard
Mineola, NY 11501
        By: Michael Anthony Miranda, Esq.
           Anne K. Zangos, Esq.
           Kelly Courtney Spina, Esq., Of Counsel

**SPATT, District Judge**.

       The Plaintiff Margaret Whitting ("Whitting" or "the Plaintiff") commenced this action

against Locust Valley Central School District ("LVCSD" or "the Defendant") for age

discrimination under both federal and state law.  Presently before the Court is the Defendant's

motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P. 56"). For the reasons set forth below, the motion is granted.

## I. BACKGROUND

All of the following facts are undisputed unless otherwise noted.

Whitting was born in June 1965 and has a Bachelor's degree in Elementary Education; a Master's degree in Special Education; and a certification in Literacy. She is currently 46 years old. She was hired by LVCSD when she was 40 years of age for a part-time special education teaching position in the Defendant's middle school for the 2005–2006 school year. At the time she interviewed, Whitting knew that the position was for a duration of only one year. During the 2005–2006 school year, Whitting's job performance was evaluated by Dr. John Castronova, her immediate supervisor, and Matthew Sanzone, the middle school principal. In their observation reports, Dr. Castronova and Mr. Sanzone noted good practices, but also included recommendations for improvement.

In the Spring of 2006, the Plaintiff applied for a probationary track position for the 2006–2007 school year. The Defendant considers "probationary track" to be synonymous with "tenure track", though the Plaintiff disputes this. Regardless, as the Court sees no legal significance of either term, the Court will use these two terms interchangeably. Whitting interviewed with three hiring committees for the 2006–2007 probationary track position. Several of the individuals on these committees were over 40 years of age. (See Def. 56.1 ("The third committee consisted of Richard Hirt . . . Plaintiff describes Mr. Hirt as being in his early sixties at the time.").) The Plaintiff did not receive the 2006–2007 tenure track position. Instead, the position was offered to Michelle Maltempi, who was in her early twenties but arguably more qualified. The Plaintiff

believes that her age was a factor as to why she did not receive the position, although she never told anyone that was how she felt.

Whitting was then offered, and accepted, a position as a leave replacement high school education teacher with LVCSD for the 2006–2007 school year. Kerri Insardi and Samantha Jones, who were approximately 23 years old and 24 years old respectively at the time, were also offered leave replacement positions with LVCSD and not probationary track positions. During the 2006–2007 school year, the Plaintiff's supervisor was again Dr. Castronova. He observed the Plaintiff's performance and completed an evaluation. In this report, he made several recommendations for improvement. He also completed a probationary teacher performance evaluation, making both positive and negative comments.

The Plaintiff again applied for a tenure track special education position for the 2007–2008 school year. The Plaintiff interviewed with several committees but ultimately did not receive the position. Whitting was later told by Dr. Castronova that the reason she was not offered the job was because she did not interview well. The position was given to Kristy Klug, who had already obtained tenure in New York State while working in a different school district. Klug was approximately thirty years old at the time. The Plaintiff believes that she was also denied this position due to her age, and she consulted her union representative, Gabby Harrington, about being denied a tenure track position. However, in her discussion, she did not specify anything regarding age or age discrimination.

Whitting was again offered, and accepted, a position as a leave replacement high school education teacher with LVCSD for the 2007–2008 school year. Her performance during that year was again evaluated by Dr. Castronova.

In June 2008, Whitting once more applied for a tenure track position for the 2008–2009 school year. The Plaintiff interviewed with several committees in the Spring of 2008, but did not get the position at that time. Whitting was eventually told by Dr. Castranova that the reason she did not get the position was because she was not dually certified, meaning to be certified in special education as well as a content area. The Plaintiff does not contest that she is only certified in literacy beyond special education, which is not a content area. On the other hand, the Plaintiff's affidavit states that the posting for the position required an individual who was *either* dually certified or highly qualified. Although the Plaintiff admits she was not dually certified at the time, she claims that she was highly qualified for the position. Whitting also emphasizes that she was working towards a certification in Science, though she never completed the certification.

Finally, in August 2008, Whitting was offered, and accepted, a tenure track special education position with LVCSD for the 2008–2009 school year. The Plaintiff had a new set of supervisors for the 2008–2009 school year, including Lori Saland, who became Assistant Director of Special Education. Saland observed the Plaintiff in September 2008 and had several recommendations for Whitting's performance, as well as many positive remarks. Plaintiff's other observations throughout the school year similarly contained both positive and negative comments. At the midway point in the school year, January 2009, one of the Plaintiff's supervisors advised her that she may not receive tenure at the end of the school year.

On March 19, 2009, the Plaintiff received an email from the Secretary to the Assistant Superintendent, requesting that the Plaintiff contact her in order to schedule an appointment for a portfolio review. (Pl. Ex. E.) A portfolio review is a tool utilized by school administrators to assess the capabilities of teachers that may potentially qualify for tenure. Whitting claims that the portfolio review was scheduled for March 25, 2009, but that a day prior, she was informed

4

that the review was cancelled.  She was told she would be contacted about rescheduling the appointment, but never received a call to do so.

On March 30, 2009, an interoffice memorandum was sent from an individual named Martin Lupson to Dr. Anna Hunderford, the new superintendent, entitled "Update on Probationary Staff".  This memorandum detailed three staff members who were not being recommended for tenure, and four staff members who were being recommended for a fourth year of probationary employment, including the Plaintiff.  According to the Defendant, a fourth year is offered to a teacher when the District's administration is not prepared to offer a teacher tenure based upon demonstrated performance, but would like the opportunity to spend more time with the teacher.

Of the three staff members who were not being recommended for tenure, one was 49 years old, one was 31 years old, and one was 29 years old.  Thus, two of the three staff members denied tenure were under 40 years old and younger than the Plaintiff.  As for the other three staff members who were recommended for a fourth year of probationary employment along with the Plaintiff, one was 51 years old, one was 29 years old, and one was 56 years old.  Thus, two of the teachers awarded a fourth probationary year were older than the Plaintiff, and one was younger than the Plaintiff.  There were six staff members who were awarded tenure at the conclusion of the 2008–2009 school year.  Of these six staff members, one was approximately 48 years old and was therefore older than the Plaintiff.

The process for tenure is as follows.  The superintendent relies upon the recommendations of the teacher's immediate supervisor, the teacher's principal, and the Assistant Superintendent for Curriculum and Instruction, in order to make the decision whether to recommend a teacher for tenure.  All of the administrators involved in the recommendation

process must be in agreement in order for a teacher to be recommended for tenure. The superintendent makes the final recommendation to the Board of Education.

The parties do not dispute that there was a disagreement between Principal Dr. Kieran McGuire, Assistant Superintendent Ms. Judith Marino, Assistant Superintendent for Human Resources and Management Services Martin Lupson, and Assistant Director of Special Education and Pupil Services Lori Saland, concerning the Plaintiff's suitability for tenure at the end of the 2008–2009 school year. Moreover, there is no contention that all of the administrators involved in the recommendation process must be in agreement in order for a teacher to be recommended for tenure. Saland stated in her affidavit that there was a disagreement amongst the four relevant administrators—herself, McGuire, Marino, and Lupson—and therefore it was recommended to Dr. Anna Hunderfund, the Superintendent, that the Plaintiff receive a fourth year of probationary appointment in order to further evaluate her candidacy for tenure.

Although oddly contradictory to the core of the Plaintiff's case, the Defendant claims, and the Plaintiff does not dispute, that the collective decision to recommend the Plaintiff for an additional year of probationary employment, as opposed to tenure, was not based upon her age. In fact, LVCSD contends that a teacher's age is never discussed when evaluating candidacy for tenure.

According to the Defendant, on April 1, 2009, the Plaintiff was officially informed at a meeting with her supervisors that she would not be recommended for tenure because of the new administration, but that the District would support a request for a fourth probationary year. On the other hand, the Plaintiff contends that at this meeting she was merely advised that she was going to be required to teach a fourth year with the District in the probationary track, and that she needed to sign a "Juul Agreement" to that effect or resign her position. A "Juul Agreement" is a

contract between an educator such as Whitting and her appointing authority such as LVCSD, which extends the educator's probationary period rather than terminate the educator at the end of his or her probationary period for not completing her probationary period satisfactorily. At the April 1, 2009 meeting, the Plaintiff agreed to a fourth year of probation. However, at that time, she was not given a copy of the agreement or a time frame in which it needed to be reviewed and signed. (Pl. Aff. ¶ 41.)

Martin Lupson sent the Plaintiff the Juul Agreement via email on the next day, Thursday, April 2, 2009, and she then had an opportunity to review it. Lupson testified that he expected to get the signed agreement back by the following Monday, because he had deadlines. However, Whitting argues that she was "not able to fully understand the agreement in the short amount of time that she was given". (Pl. 56.1 at ¶ 174.) The Defendant claims, without citing to any evidentiary support, that the same Juul Agreement was sent to all four teachers that were being recommended for a fourth year of probationary employment.

After Whitting read the Juul agreement, she changed her mind about agreeing to the fourth year of probationary teaching. She went to her union representative, Gaby Harrington, to discuss the contents of the agreement. The Defendant contends that the Plaintiff was dissatisfied with the tone of the first paragraph, which indicated that it was the intention of the superintendent "not to recommend [the Plaintiff's] appointment to tenure based upon [her] performance to date." (Ex. D., 165). The Plaintiff maintains that she was not comfortable with the language in the last paragraph, not the first, but that in any event, she felt that the process was moving too quickly and that she did not feel comfortable signing the Juul Agreement under such "distress." While LVCSD contends that the Plaintiff could have obtained more time to sign the agreement, the Plaintiff disputes that she was aware that this was a possibility. There is a factual

dispute over whether someone from the District referred the Plaintiff to another person to discuss the contents of the agreement. The Defendant claims that someone from LVCSD told the Plaintiff she could call "Steve", the "labor relations guy". The Plaintiff does not contest that she did not ask anyone at LVCSD for additional time to consider the agreement.

As mentioned above, the Plaintiff claims that she was told by the Defendant to sign the agreement or resign the position. Therefore, the Plaintiff chose to resign because she refused to sign the agreement. Whitting submitted her letter of resignation on April 6, 2009, effective June 25, 2009.

There is no documentation or evidence that supports the Plaintiff's claim that anyone in the district, including Lupson, would want to discriminate against her because of her age. However, the Plaintiff is of the belief that as a general matter, hiring a younger and less experienced individual is less expensive because they might not have a Master's degree or the years of teaching experience. Accordingly, the Plaintiff can identify a potential motive for age discrimination by the District, but cites no evidence whatsoever to support its existence.

## II.  DISCUSSION

### A.  Legal Standards

#### 1. Summary Judgment

It is well-settled that summary judgment under the provisions of Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>

In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir. 1995) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and <u>Ramseur v. Chase Manhattan Bank</u>, 865 F.2d 460, 465 (2d Cir. 1989)).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 122 (2d Cir. 2004) (quoting <u>Weyant v. Okst</u>, 101 F.3d 845, 854 (2d Cir. 1996)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)).  However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party.  <u>Matsushita</u>, 475 U.S. at 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538.  Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case."  <u>Gallo v. Prudential Res. Servs.</u>, 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted).  A nonmoving party may not rest upon mere conclusory allegations or denial, but must set forth "'concrete particulars'" showing that a trial is needed.  <u>R.G. Group, Inc. v. Horn & Hardart Co.</u>, 751 F.2d 69, 77 (2d Cir. 1984) (quoting <u>SEC v. Research</u>

Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978)). Thus, to defeat a motion for summary judgment, the opposing party cannot "'merely . . . assert a conclusion without supplying supporting arguments or facts.'" BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (quoting Research Automation Corp., 585 F.2d at 33).

### 2. ADEA Age Discrimination

The Age Discrimination in Employment Act of 1967 ("ADEA") makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "The ADEA covers the class of individuals who are over the age of 40, 29 U.S.C. § 631(a), and the evidentiary framework for proving age discrimination under the statute is the same as that for proving discrimination under Title VII." Dressler v. N.Y. City Dep't of Educ., No. 10 Civ. 3769, 2012 WL 1038600, at *5 (S.D.N.Y. March 29, 2012).

Where a plaintiff lacks direct evidence of age discrimination, as the Plaintiff does in this case, the Court analyzes the claims under the McDonnell Douglas burden-shifting framework. See, e.g., Holowecki v. Fed. Exp. Corp., 382 Fed. App'x 42, 45 (2d Cir. 2010); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466–67 (2d Cir. 2001). The Supreme Court has recently noted that it has not "definitively decided" whether McDonnell Douglas burden-shifting applies to ADEA claims. Gross v. FBL Financial Services, Inc., 557 U.S. 167, 175, 129 S. Ct. 2343, 2349 n.2, 174 L. Ed. 2d 119 (2009). The Second Circuit also has yet to resolve the issue. See Kalra v. HSBC Bank U.S.A., N.A., No. 08 Civ. 3966, 2010 U.S. App. LEXIS 670 at *2–3 (2d Cir. Jan. 12, 2010) (unpublished opinion) ("We need not decide whether to continue to apply McDonnell Douglas or to abandon it in light of Gross."). However, unless and until the Supreme Court or the Second Circuit instructs otherwise, this Court will do as other district courts have

10

done and continue to apply the McDonnell Douglas burden-shifting framework to claims arising under the ADEA.

Under the McDonnell Douglas framework "a plaintiff . . . has the initial burden of establishing a *prima facie* case of discrimination." Sorlucco v. N.Y. City Police Dep't, 888 F.2d 4, 7 (2d Cir. 1989). In order to establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably, or that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Williams v. R.H. Donnelley Corp., 368 F.3d 123, 126 (2d Cir. 2004); accord Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (explaining that to establish a *prima facie* case of age discrimination, a plaintiff must demonstrate that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger'" (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996) (additional citations omitted)).

Once a plaintiff demonstrates these elements, thereby establishing a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Spence v. Maryland Cas. Co., 995 F.2d 1147, 1155 (2d Cir. 1993). If the defendant carries this burden, the burden shifts back to the plaintiff to introduce

evidence that the defendant's explanations are pretextual.  Id.  In order to satisfy her burden at

the final stage, a plaintiff must offer evidence that age discrimination was the "but-for" cause of

the challenged actions.  Gross v. FBL Financial Services, Inc., 557 U.S. 167, 176,  129 S. Ct.

2343, 2350, 174 L. Ed. 2d 119 (2009).  "The ultimate burden of persuading the trier of fact that

the defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff."  Yu v. N.Y. City Hous. Dev. Corp., No. 11 Civ. 2738, 2012 WL 3660652, at *2 (2d

Cir. Aug. 28, 2012) (quoting Tex Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.

Ct. 1089, 67 L. Ed. 2d 207 (1981)).  However, in order to preclude summary judgment, "the

plaintiff need not prove that the proffered reasons were pretextual; rather, [s]he need only (1)

adduce evidence from which a reasonable fact-finder could directly infer that the discriminatory

intent more likely motivated the employer than the proffered reason, or (2) show that the

proffered explanation is unworthy of credence."  Dressler, 2012 WL 1038600, at *6.

### 3. New York State Human Rights Law

The Plaintiff also asserts claims against the Defendant under the New York State Human

Rights Law, NY Exec. Law § 290 et seq. ("NYSHRL").  The NYSHRL provides, in pertinent

part, that it is illegal for "an employer . . . because of an individual's age . . . to discriminate

against such individual in compensation or in terms, conditions or privileges of employment."

N.Y. Exec. Law § 296(1)(a) (McKinney 2010).  Claims for age discrimination under the

NYSHRL are analyzed under the same basic framework as required in a federal ADEA claim.

See Ludwig v. Rochester Psychiatric Ctr., 347 Fed. App'x 685, 686 n.1 (2d Cir. 2009);

Wanamaker v. Columbian Rope Co., 108 F.3d 462, 467 (2d Cir. 1997).

**B.  As to the Plaintiff's ADEA Claim**

Unfortunately, the Plaintiff did not respond to the majority of the Defendant's arguments in support of its motion for summary judgment.  Nevertheless, the Court will assess whether there are genuine issues as to any material facts, considering the evidence in the light most favorable to the non-moving party, which in this instance is the Plaintiff Whitting.  The Court's role is not to weigh the evidence or try factual issues, but rather to determine whether there are even issues to be tried.  "Accordingly, the Court [need] not reach whether Plaintiff's evidence is sufficient to prove discrimination.  For Plaintiff's ADEA discrimination claim to survive this motion for summary judgment, it is enough that Plaintiff evidences a genuine dispute as to an inference of discrimination such 'that a reasonable jury could return a verdict for'" her.  Dressler, 2012 WL 1038600, at *9 (quoting Anderson, 477 U.S. at 248).

**1.  The Plaintiff's *Prima Facie* Case**

First, the Court will assess whether the Plaintiff has established a *prima facie* case of discrimination, specifically demonstrating that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably, or that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

Here, the Plaintiff has demonstrated that she is within a protected age group, being over 40 years of age.  In addition, the Plaintiff has adequately demonstrated and the Defendant does not dispute that she was qualified for her position.  See Herbert v. City of New York, 748 F. Supp. 2d 225, 237 (S.D.N.Y. 2010) (stating that to establish a *prima facie* showing of qualification, a plaintiff must show only that he "possesses the basic skills necessary for

performance of the job") (citation omitted); see also Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 171 (2d Cir. 2006) ("'McDonnell Douglas requires only a minimal showing of qualification to establish a *prima facie* claim. [A plaintiff] only needs to demonstrate that she possesses the basic skills necessary for performance of [the] job.'" (quoting Owens v. New York City Housing Auth., 934 F.2d 405, 409 (2d Cir. 1991))).

The Plaintiff went through several rounds of interviews for a tenure track position, ultimately receiving a probationary track position for one year, rendering her eligible for permanent tenure. Thus, Whitting appeared to be qualified for the position, or else the Defendant would not have interviewed her multiple times and given her a probationary position. See Johnson v. Connecticut, 798 F. Supp. 2d 379, 386 (D. Conn. 2011) (finding plaintiff had met burden on *prima facie* case to demonstrate qualification for job on failure to promote claim where "[p]laintiff was pre-screened and received an interview because he had the requisite qualifications"); Aspilaire v. Wyeth Pharmaceuticals, Inc., 612 F. Supp. 2d 289, 306 (S.D.N.Y. 2009) ("plaintiff has made allegations sufficient to set forth a *prima facie* case of discriminatory failure to promote based on the following factors: . . . she was qualified for the position of administrative assistant on the first shift, which is evident based on the fact that Uram selected her from among a pool of applicants for an interview").

The next stage of the Court's analysis is to determine whether the Plaintiff has suffered an adverse employment action. There are two potential actions that could qualify: either the occasions where Whitting applied for the probationary track positions but did not receive them, or the instance where Whitting was eligible for a permanent tenure position but instead was told she had to complete an additional year in her probationary track position. Put another way, the adverse employment action is either the denials of the tenure track positions or the denial of

actual tenure.  See, e.g., Curcio v. Roosevelt Union Free Sch. Dist., No. 10 Civ. 5612, 2012 WL 3646935, at *7 (E.D.N.Y. Aug. 22, 2012) ("he has shown that he suffered adverse employment actions: the denial of tenure and termination of his probationary employment"); see also Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (stating that *prima facie* case of discrimination was satisfied in part by showing that plaintiff "was denied the position").  At least as to the tenure track positions, as opposed to the final denial of tenure in 2009, the Plaintiff concedes that there is no difference in the benefits between a leave replacement and a tenure track position.  (Def. 56.1 at ¶ 36.)  Thus, it is arguable that the Plaintiff did not suffer any change in salary, benefits, working conditions, or hours when she was offered leave replacement positions as opposed to tenure track positions.

However, the Court need not reach a conclusion as to whether either or both of these instances would qualify as adverse employment actions.  This is because even if the Court assumes that Whitting suffered adverse employment actions, she cannot demonstrate any circumstances giving rise to an inference of discrimination.  See Skalafuris v. City of New York, Dep't of Corr., 437 Fed. App'x 54, 55 (2d Cir. 2011) ("The DOC concedes that Skalafuris is a member of a protected class, was qualified for the position to which he applied, and suffered an adverse employment action; the only dispute is whether the circumstances surrounding that action give rise to an inference of age discrimination.  They do not.").

The Plaintiff's account simply contains no inference of age bias.  The Plaintiff cannot rely on "purely conclusory allegations of discrimination, absent any concrete particulars." Dorfman v. Doar Comm'ns., Inc., 314 Fed. App'x 389, 390 (2d Cir. 2009).  Whitting does not cite to any evidence whatsoever that would support her claim that anyone from LVCSD would want to discriminate against her.  See Burke v. Gutierrez, No. 04 Civ. 7593, 2006 WL 89936, at

*7 (S.D.N.Y. Jan. 12, 2006) ("[V]ague recollections of conversations in which third parties are alleged to have made admittedly unsubstantiated suggestions of discriminatory intent are insufficient to meet even the minimum burden imposed on a plaintiff in an employment discrimination case.").

In <u>Valtchev v. City of New York</u>, the Second Circuit affirmed the dismissal of the plaintiff's age discrimination claims under the ADEA upon evidence significantly more substantial than that adduced here:

> Valtchev principally presents three pieces of evidence as proof of animus: (1) an October 2007 article in which GCA's Principal was quoted stating that GCA welcomes the introduction of "young, energetic teachers," (2) Valtchev's own allegations that a GCA administrator told him "DOE was implementing a policy of phasing out older teachers," and (3) affidavits from other teachers at GCA that were prepared for a lawsuit in which plaintiff is not a party, alleging age discrimination at the school.

400 Fed. App'x 586, 592 (2d Cir. 2010). There, the court stated that "[t]he record does not contain sufficient evidence for a rational trier of fact to find that Valtchev established the fourth element of the *prima facie* case, principally that the adverse employment action took place under circumstances giving rise to an inference of discrimination." <u>Id.</u> Far less is alleged here than was alleged in <u>Valtchev</u>. In fact, the Plaintiff cannot cite to a single piece of evidence to support a claim of discriminatory animus.

Instead, the Plaintiff appears to rely solely on the idea of disparate treatment to support her claim of discrimination.

> A showing of disparate treatment—that is, a showing that the employer treated plaintiff "less favorably than a similarly situated employee outside his protected group"—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case. . . . A plaintiff relying on disparate treatment evidence "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare

> herself." . . . Ordinarily, the question whether two employees are
> similarly situated is a question of fact for the jury.

Mandell v. Cnty. of Suffolk & John Gallagher, 316 F.3d 368, 379 (2d Cir. 2003) (citation

omitted).

In this regard, the Plaintiff has cited to other LVCSD employees who received tenure or

tenure track positions and were younger than 40 years of age, when the Plaintiff was denied

those positions. Cf. Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 317 (2d Cir.1999)

(noting that "the fact that the replacement is substantially younger than the plaintiff is a more

valuable indicator of age discrimination, than whether or not the replacement was over 40").

Specifically she points to Michelle Maltempi, who received the tenure track position instead of

the Plaintiff in 2006–2007; and Kristy Klug, who received the tenure track position instead of the

Plaintiff in 2007–2008. Whitting argues that her credentials are far superior to those of the

candidates that were granted tenure track positions.

However, the Court does not find Whitting's qualifications to be so superior so as to raise

an inference of discrimination. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103

(2d Cir. 2001) ("When a plaintiff seeks to prevent summary judgment on the strength of a

discrepancy in qualifications ignored by an employer . . . the plaintiff's credentials would have to

be so superior . . . that 'no reasonable person, in the exercise of impartial judgment, could have

chosen the candidate selected over the plaintiff for the job in question.'") (citations omitted).

Notwithstanding that Whitting's resume contained many impressive features, it is not at all clear

that she was more qualified for the teaching positions for which she applied—one of which

requested dual certification—than the candidates that were hired. Klug had been previously

granted tenure in another district in New York State and thus, although thirty years of age, she

plainly appears to the Court to in fact be the stronger candidate.  With regard to Maltempi, it is possible that she had comparable qualifications to the Plaintiff.  However, it is not the case that the Plaintiff's credentials were so superior that no reasonable person would have impartially chosen Maltempi over Whitting.  Moreover, Maltempi's employment with the Defendant was terminated only a year after she was appointed, thereby undercutting any disparate treatment claim by the Plaintiff based on Maltempi's hiring.

As for the final tenure decision in 2009, the Plaintiff has also failed to set forth any claim of age discrimination on the basis of disparate treatment.  Of the three staff members who were not recommended for tenure at all and thereby terminated, two were younger than the Plaintiff.  Of the three staff members who, along with the Plaintiff, were recommended for a fourth year of probationary employment, one was younger than the Plaintiff.  Of the six staff members who were awarded tenure instead of the Plaintiff, one of these individuals was older than the Plaintiff.  In sum, there were younger candidates that were denied tenure, and there were older candidates that secured tenure.  See Mingguo Cho v. City of N.Y., No. 11 Civ. 1658, 2012 WL 4364492, *5 (S.D.N.Y. Sept. 25, 2012) (concurring with the decision that "given that DOB appointed four candidates to the Construction Inspector position who were older than Cho, Magistrate Judge Dolinger found that there could be no legitimate inference of age discrimination.").

In addition to the Plaintiff's failure to meet the requisite standard to establish a *prima facie* case of age discrimination, there are a number of factors here that weigh heavily against any possible finding of discriminatory intent.  See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) (noting that certain factors "strongly suggest that invidious discrimination [is] unlikely.").

First, the Defendant points out that any potential inference of age discrimination is undercut where a plaintiff is over 40 when hired.  <u>See Vinokur v. Sovereign Bank</u>, 701 F. Supp. 2d 276, 288 (E.D.N.Y. 2010).  Here, Whitting was 40 years old when she was initially hired for the part-time leave replacement position for the 2005–2006 school year.  (Def. 56.1 at ¶17.)  Whitting was then 41 and 42 years old, respectively, when she was hired for the full-time leave replacement positions for the 2006–2007 and 2007–2008 school years.  Thus, the Court finds that "the fact Plaintiff was within the age-protected class when hired further undermines an inference of age discrimination."  (Def. Mem. at 6.)  <u>See Kalra v. HSBC Bank USA, N.A.</u>, 567 F. Supp. 2d 385, 398 n.9 (E.D.N.Y. 2008) (collecting cases and noting that "although not a dispositive factor, any inference of discrimination is further undermined by the fact that plaintiff . . . was 'well within the protected class when first hired'"); <u>Melnyk v. Adria Labs., Div. of Erbamont Inc.</u>, 799 F. Supp. 301, 319 (W.D.N.Y. 1992) ("[I]t is difficult to justify a conclusion of age discrimination when [the defendant] hired [the plaintiff] just one year prior to her entry into the protected class.").  Again, there is no dispute of fact that Plaintiff was age-protected at the time of her hire, and this fact weighs against an inference of age discrimination.

Next, the Defendant points out that the same individual who the Plaintiff places full blame on for the alleged age discrimination—Martin Lupson, the District's Assistant Superintendent for Human Resources and Management Services—participated in her hiring for the 2006, 2007, and 2008 school years.  This is known as the "same actor" doctrine.  The Second Circuit has observed, in the context of age discrimination claims, that "when the person who made the decision to fire was the same person who made the decision to hire, especially when the firing occurred only a short time after the hiring, it is difficult to impute to him an invidious

firing motivation that would be inconsistent with his decision to hire." Jetter v. Knothe Corp., 324 F.3d 73, 76 (2d Cir. 2003).

Relying on this principle, the Defendant contends there is a "strong inference" against discriminatory animus when the same supervisor who hires someone then makes an adverse employment decision concerning that employee. See Young v. Nassau Univ. Med. Ctr., No. 10 Civ. 0649, 2011 WL 6748500, at *6 (E.D.N.Y. 2011). The Court concurs with this contention. "[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997); see also Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (citing Grady and describing the same-actor doctrine as a "highly relevant factor in adjudicating a motion for summary judgment on an ADEA claim"). There is no factual dispute that Lupson was involved in the Plaintiff's hiring— he interviewed her in 2006–2007; 2007–2008; and 2008–2009. (Def. 56.1 at ¶¶ 40; 69; 88.) While Dr. Hunderfund was the final decision maker, there is no genuine factual dispute that Lupson participated in the relevant hiring determinations.

The same-actor doctrine is particularly apt when the adverse employment action occurred less than two years after the hiring and when the person who made the employment decision is in the same protected class as the plaintiff. Here, the Plaintiff was hired for a tenure track position in the Fall of 2008, while the adverse employment decision arguably occurred only months later, by a man who was also over 40 years of age. Thus, the same-actor inference is particularly apposite to Whitting's denial of tenure. See Cooper v. Morgenthau, No. 99 Civ. 11946, 2001 WL 868003, at *6 (S.D.N.Y. July 31, 2001) ("The 'underlying rationale for the [same actor] inference is simple: it is suspect to claim that the same manager who hired a person in the

protected class would suddenly develop an aversion to members of that class."') (internal quotations omitted).

The Plaintiff argues that there is an issue of fact as to who actually made the final determination regarding the tenure decisions. For example, Lupson testified at his deposition that no one other than the superintendent is empowered to recommend someone for tenure. (Lupson Dep. at 51.) However, that does not mean that Lupson did not participate in the hiring decisions. Rather, it is undisputed that he interviewed the Plaintiff on several occasions and that he supported a recommendation to the Superintendent who would then make a recommendation to the Board of Education to grant or deny tenure. The "Plaintiff's argument that the same actor doctrine should not apply therefore rings hollow." Kaplan, 2010 WL 1253967, at *5.

On a final note, the Court finds that the administrators involved in the employment decisions at issue in the present case were all over 40 years of age. It is well settled that age discrimination is unlikely where the people who partake in the claimed adverse employment actions affecting a plaintiff's employment are over 40 years old. Zufante v. Elderplan, Inc., No. 02 Civ. 3250, 2004 WL 744858, at *6 (S.D.N.Y. March 31, 2004). Here, every decision-maker––Anna Hunderfund; Martin Lupson; Judith Marino; Kieran McGuire; and Lori Saland—was older than Whitting.

Overall, the Court is always leery of granting summary judgment in an employment discrimination case, in light of the oft-cited proposition that "direct evidence of discrimination— a 'smoking gun' . . . attesting to a discriminatory intent is typically unavailable." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 76 (2d Cir. 2001) (internal citations omitted). Nevertheless, it is now beyond cavil that summary judgment may be appropriate "even in the fact-intensive context of discrimination cases." Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d

456, 466 (2d Cir. 2001). Here, the "Plaintiff has failed to come forward with a genuine issue of fact material to the sole contested element of Plaintiff's *prima facie* case—whether the Plaintiff's [failure to obtain tenure] occurred in circumstances giving rise to an inference of age discrimination. Further, the undisputed facts cited by Defendant weigh against finding an inference of age discrimination. Plaintiff has failed to establish a *prima facie* case under the ADEA and has failed to fulfill her burden in opposing Defendant's motion for summary judgment." Kaplan v. Beth Isreal Med. Ctr., No. 07 Civ. 8842, 2010 WL 1253967, at *5 (S.D.N.Y. March 31, 2010).

**C. The Defendant's Legitimate Non-Discriminatory Reasons to Deny Tenure**

According to the Defendant LVCSD, even if the Plaintiff could somehow establish a *prima facie* case of age discrimination, it would still be entitled to summary judgment based upon the District's legitimate, non-discriminatory reasons for not offering the Plaintiff tenure. As set forth above, if the Defendant carries this burden, the burden shifts back to the Plaintiff to introduce evidence that the Defendant's explanations are pretextual.

Here, the school district appeared to have performance concerns regarding the Plaintiff, and as such had a legitimate reason to not offer her a tenure track position and/or ultimately offer her tenure. See Woodard v. Monticello Cent. Sch. Dist., No. 06 Civ. 13361, 2008 WL 5062125, at *9 (S.D.N.Y. Dec. 1, 2008) (finding a teacher's poor performance evaluations to be a nondiscriminatory justification for terminating the plaintiff); see also Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (holding that "an honest belief" that an employee's job performance "[does] not measure up to that required" is a legitimate, nondiscriminatory reason to discharge an employee); Aksamit v. 772 Park Ave. Corp., No. 00 Civ. 5520, 2003 WL 22283813, at *4

(S.D.N.Y. Oct. 2, 2003) ("poor work performance" is a legitimate, nondiscriminatory reason to fire an employee).

There were documented issues with the Plaintiff's teaching habits. (See, e.g., Def. Ex. S; Ex. T ("the lessons need to be more challenging and appropriate for the grade level of her students. Her lessons often lack excitement; she needs to express enthusiasm more consistently, . . In addition, Mrs. Whitting needs to further differentiate her lessons in order to successfully supply for the diverse needs of her students.").) "[A]dvancement to tenure entails what is close to a life-long commitment by a university [or school], and therefore requires much more than the showing of performance of sufficient quality to merit continued employment." Lieberman v. Gant, 630 F.2d 60, 64 (2d Cir. 1980) (internal citations omitted).

Certainly there were positive attributes of Whitting's performance documented as well. However, this does not mean the Court should "second-guess an employer's non-discriminatory business decisions", even if it disagrees with their wisdom, provided that it was not based on discrimination. Kennebrew v. New York City Hous. Auth., No. 06 Civ. 13361, 2002 WL 265120, at *13 (S.D.N.Y. 2002); see Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) ("[The court's] role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.'" (internal quotations omitted). This Court is not a "super tenure-review committee". Zahorik v. Cornell Univ., 579 F. Supp. 349, 352 (N.D.N.Y. 1983).

As the Defendant has met its burden of production and proffered a nondiscriminatory reason for not offering the Plaintiff tenure, the Plaintiff's claim can survive summary judgment only if she has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision not to offer her tenure was based on the fact that

she was over the age of 40. In particular, she must demonstrate by a preponderance of the evidence that age was the "but-for" cause of the challenged adverse action, and not simply that age was "one motivating factor" in the decision. Gross, 129 S. Ct. at 2352. The Court concludes that Plaintiff has not done so.

The Second Circuit has instructed that in determining whether a plaintiff has met her burden at the third step of the McDonnell Douglas analysis, a court is to use a "case by case" approach that evaluates "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." James v. N.Y. Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods. Co., 530 U.S. 133, 148–49, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

In her attempt to rebut the Defendant's age-neutral explanation for not offering the Plaintiff tenure track positions and/or not ultimately offering her tenure, the Plaintiff offers the same allegations that she has cited as supporting her *prima facie* case. Again, this largely consists of the Plaintiff emphasizing the positive remarks on her performance reviews and selectively pointing to the relatively younger individuals who received the positions at LCSVD that she coveted. These allegations, even when considered in their totality, are insufficient to carry the Plaintiff's burden.

Undoubtedly, Whitting subjectively believes that age was a determinative factor in each of LVCSD's employment decisions. However, the Plaintiff offers no support for this contention. "The plaintiff's belief that she has been the victim of age discrimination cannot defeat a motion for summary judgment in the absence of any corroborating evidence." Colon v. Trump Intern. Hotel & Tower, No. 10 Civ. 4794, 2011 WL 6092299, at *8 (S.D.N.Y. Dec. 7, 2011). Moreover,

the absence of any discriminatory comments also weakens the Plaintiff's claim that age was a factor in any of the tenure determinations. See Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (one factor in favor of summary judgment was that the "plaintiff has failed to offer any evidence that he was subjected to any age-related comments or criticisms on the job"). "Further, there is no indication that older teachers within the school district were in any way treated differently than younger ones." Francis v. Elmsford School Dist., 263 Fed. App'x 175, 178 (2d Cir. 2008).

The only potential issue that must be addressed is that, according to the Plaintiff, the explanation given by the Defendant for why she did not receive tenure is that there was a new administration (Def. Ex. D at 147), although the Defendant now also cites to the Plaintiff's subpar performance in the classroom. Arguably, the proffered reason of the new administration could have been pretextual considering that others were in fact given tenure that year, and the contrasting explanation provided in the instant action. See EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994) (holding that conflicting explanations may serve as evidence of pretext).

"Inconsistencies in an employer's justifications for taking an action, particularly where different reasons were offered at different times . . . , can raise an issue of fact with the regard to the veracity of the proffered reasons." McDowell v. T-Mobile USA, Inc., No. 04 Civ. 2909, 2007 WL 2816194, at *14 (E.D.N.Y. Sept. 26, 2007); see Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000) (finding issue of fact where employer "expressly stated" to the EEOC that job performance was not a factor in plaintiff's termination and then later asserted plaintiff was "terminated in part because of poor performance."); E.E.O.C, 44 F.3d at 120 (vacating grant of Rule 50 motion where defendant later abandoned the initial justification given to state investigators, which defendant had earlier termed the "sole reason" for plaintiff's

discharge); Schmitz v. St. Regis Paper Co., 811 F.2d 131, 132-33 (2d Cir. 1987) (affirming trial

court's finding of discrimination where employer incorrectly told New York State Division of

Human Rights that plaintiff was terminated based on seniority and then proferred a different

rationale at trial).  But see Lyte v. S. Cent. Conn. Reg'l Water Auth., 482 F. Supp. 2d 252, 265

(D. Conn. 2007) (distinguishing Carlton and finding that defendant did not offer "inconsistent

and varying explanation" for plaintiff's termination because although defendant's original

explanation was the plaintiff's failure to return to work following a leave of absence and the later

explanation was plaintiff's poor performance, plaintiff had, in fact, received numerous warnings

about his performance).

      In this case, the Court does not find that the alleged contrasting explanations with regard

to the Plaintiff's failure to obtain tenure alter the outcome of the motion for summary judgment.

Assuming the Plaintiff was told that the reason she was not being promoted was because there

was a new administration in place, this is not necessarily contradictory to the explanation that the

Plaintiff's performance was deficient.  If the sole reason for the denial of tenure was the

Plaintiff's performance, then it is likely that the Defendant would not have offered the Plaintiff

an additional probationary year so that she could improve and so the district could conduct

further evaluations.  Rather, the fact that the Plaintiff's performance was not up to par, combined

with the fact that there was a new administration that needed additional time to observe the

Plaintiff, is harmonious with the result that the Plaintiff was asked to perform an extra year on

the tenure track.  See Warren v. N. Shore Univ. Hosp. at Forest Hills, No. 03 Civ. 0019, 2006

WL 2844259, at *10 (E.D.N.Y. Sept. 29, 2006) (granting summary judgment where defendant's

multiple reasons for not hiring plaintiff were "not conflicting, but complementary").

As the Defendant states in its memorandum in support of its motion, "[r]ather than give tenure to a teacher who is not qualified, or terminate a teacher who has the potential to grow, the District sometimes offers a fourth year of employment to teachers with whom the administration members would like to spend more time with in order to hone their skills." (Def. Mem. at 15.) More importantly, to the extent that the Defendant's explanations to the Plaintiff were conflicting, in light of the other evidence in this case (particularly the same-actor doctrine), it is insufficient to show pretext.

In sum, this is a case where the Defendant school district has presented a clear, nondiscriminatory reason for the decision not to offer the Plaintiff a tenure position. The Plaintiff's proof of her *prima facie* case is deficient and the Plaintiff cannot offer any additional evidence to demonstrate that the Defendant's proffered reason for not offering her tenure is false. The Defendant's case is further strengthened by the fact that the same actor hired and fired the Plaintiff within a short period of time; the Plaintiff was over 40 years of age when hired; those that were making the employment decisions were also over 40 years of age; and the Plaintiff was not subjected to any age-related comments. Based upon all of the evidence, no reasonable jury could find that age was a motivating factor or a "but for" cause in the Plaintiff's applications for tenure.

## D.  Constructive Discharge

The Plaintiff has also asserted a claim for constructive discharge in connection with the short time frame she was given to sign the Juul Agreement and her subsequent refusal to sign it, resulting in the expiration of her employment with the Defendant.

"A constructive discharge . . . occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary

resignation." Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993). "[A] constructive discharge cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer. Nor is the test merely whether the employee's working conditions were difficult or unpleasant." Id. "[A] claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Stetson v. NYNEX Service Co., 995 F.2d 355, 361 (2d Cir. 1993).

The Plaintiff claims that she met her burden to show that her working conditions were so intolerable that a reasonable person would have felt compelled to resign. In particular, she alleges that she was repeatedly denied tenure track positions in favor of younger teachers, and when she finally was "due" to receive it, she was made to hastily make a decision to sign a Juul Agreement, that would obligate her to work for another year as an untenured teacher or resign her position. According to Whitting, a reasonable person would conclude that her refusal to sign the agreement constitutes a basis for constructive discharge. The Court disagrees.

The standard for constructing discharge is "demanding". See Stetson v. Nynex Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993). A constructive discharge claim "must entail something more than what is required for . . . [a] hostile-environment claim." Id. Even if the Court were to assume that Whitting felt rushed with regard to the Juul Agreement, and thus she felt pressured to sign the agreement in a rapid manner or else resign, this would not be sufficient for a constructive discharge claim. This is the opposite of the "typical constructive discharge case", where the issue is "whether an employee was pressured to leave, and did so, because of intentionally-inflicted intolerable working conditions." Paolillo v. Dresser Indus., Inc., 865 F.2d

37, 40 (2d Cir. Cir. 1989). Here, the only potential pressure that was exerted on the Plaintiff was to sign an agreement that would actually extend her employment, not create an environment that was so unpleasant that she would feel compelled to resign.

Moreover, to the extent that the Plaintiff subjectively felt compelled to resign, the Court finds that a reasonable person in Whitting's shoes would not have felt that constraint. The Court recognizes that it would have been difficult to seek legal advice with regard to the Juul Agreement in the short time frame that the Plaintiff was given. However, Whiting could have requested additional time from the Defendant to review the contract, but admits she did not do so. See Weisbecker v. Sayville Union Free Sch. Dist., No. 10 Civ. 4645, 2012 WL 3975049, at *15 (E.D.N.Y. Sept. 12, 2012) ("With respect to Jones' recommendation that the Board terminate plaintiff's probationary status, this action does not constitute a constructive discharge, especially in light of plaintiff's ability to request reasons for the recommendation from Jones and submit a response to the Board.").

Thus, given the uncontroverted evidence, no rational jury could find a constructive discharge in this case.

**E. As to the Plaintiff's NYSHRL Claim**

For the reasons discussed above in the context of the Plaintiff's ADEA claim, the Defendant's motion for summary judgment is granted as to Plaintiff's NYHRL age discrimination claim, because the Plaintiff has failed to adduce evidence to support a *prima facie* case of age discrimination that any arguable adverse employment actions arose out of circumstances supporting an inference of discrimination. Moreover, Whitting's claims do not survive summary judgment because LVCSD has adduced evidence suggesting it had a legitimate non-discriminatory reason for the not granting the Plaintiff tenure, and the Plaintiff has not

29

adduced any evidence raising a genuine dispute as to whether that reason was a pretext for discrimination.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendant's motion for summary judgment is granted and the complaint is dismissed in its entirety; and it is further

**ORDERED**, that the Clerk of the Court is directed to mark this case as closed.


**SO ORDERED.**
Dated: Central Islip, New York
October 22, 2012


_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge